Jeffrey D. Kaliel (SBN 238293)
**KALIEL GOLD PLLC**
*jkaliel@kalielgold.com*
1100 15th Street NW, 4th Floor
Washington, D.C.  20005
Tel: (202) 350-4783

Sophia Goren Gold (SBN 307971)
**KALIEL GOLD PLLC**
*sgold@kalielgold.com*
950 Gilman Street, Suite 200
Berkeley, California 94710
Tel: (202) 350-4783

Scott Edelsberg (SBN 330090)
**EDELSBERG LAW, P.A.**
scott@edelsberglaw.com
1925 Century Park East, Suite 1700
Los Angeles, California 90067
Tel: (305) 975-3320

*Attorneys for Plaintiffs and the Proposed Class*

[additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE ASH and MOSHE STEMPEL, individually and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>v.<br><br>AXOS BANK d/b/a UFB DIRECT<br><br><br>         Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

1

CLASS ACTION COMPLAINT

Plaintiffs Kyle Ash ("Ash") and Moshe Stempel ("Stempel") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this Complaint against Defendant Axos Bank d/b/a UFB Direct Capital ("UFB" or "Defendant"). Plaintiffs make the following allegations based upon, *inter alia*, the investigation made by their counsel, and based upon information and belief, except as to those allegations specifically pertaining to Plaintiffs, which are based on their personal knowledge.

## NATURE OF ACTION

1.     This is a proposed class action on behalf of nationwide consumers seeking monetary damages, restitution, and equitable relief from UFB's misrepresentations and omissions in connection with its false marketing of a series of purportedly "high yielding" savings accounts that did not offer the highest interest rates available in the market, or that UFB was willing to pay to other accounts it subsequently created in order to avoid paying the high interest rates it promised to earlier accountholders.

2.     UFB, a division of Axos Bank, offers online banking services. UFB advertises itself as "one of the most established and reputable online banks in the nation."[1] UFB claims it offers "the most unique personal bank products and services" with savings accounts that "are consistently higher than the national average."[2]   UFB adds that it is proud to offer "exceptional interest rates" on its "high yield" savings accounts.[3]

3.     Although UFB would describe its high-yield savings accounts as being "tiered" based upon the size of the accountholder's balance, UFB offered the same interest rates to all account holders regardless of tier.

4.      In early 2022, and in response to Federal Reserve increasing interest rates, UFB began to aggressively market its high-yield savings accounts through a classic bait and switch scheme. The scheme was rather straight forward: UFB would introduce a new savings account program, which it advertised as its "highest yielding" savings account with a "variable" interest rate. After signing up new customers, UFB would put a cap on the interest rates on that savings account and then introduce (and advertise) a *new*

---

[1] About Us, https://www.ufbdirect.com/about-us#what-our-customers-are-saying (last visited March 11 2024).

[2] *See id.*

[3] *See id.*

saving account with a similar account name that offered a higher interest rate and annual percentage yield ("APY") than the predecessor account, which now offered a capped interest rate. UFB would then advertise the new account as the "highest yielding" savings account without notifying the existing or previous accountholders of this change, or the availability of new accounts with higher interest rates. Indeed, a consumer visiting the UFB website would not be able to discern any difference between the predecessor account(s) and the newer account due to the marketing of it being the "highest-yielding" offering. UFB would go on to label the predecessor "highest-yielding" savings account as "legacy" accounts. The interest rates on the "legacy" accounts never exceeded the interest rates on the newer accounts.

5.      UFB carried out this scheme many times. What started as UFB's general Savings account turned into UFB "Rewards" Savings,  then UFB "Elite" Savings, UFB "High-Rate" Savings, UFB "Best" Savings, UFB "Preferred" Savings, UFB "Premier" Savings, UFB "Priority" Savings, UFB "High-Yield" Savings (collectively, the "Legacy Accounts"), and UFB "Secure" Savings, which is the present accent that took effect in November 2023.

6.      Each new account would come with a higher interest rate than its predecessor, without any notice to existing accountholders. As the Federal Reserve rate increased from 0.0% in March 2022 to 5.25%-5.50% in November 2023, the APY associated with UFB's savings account products increased from 0.20% to 5.25%.

7.      Yet, every time UFB changed the name of its savings account, it would cap the interest rate on the preceding Legacy Accounts and freeze (or lower) the "varied" interest rate. For example, in December 2022, the APY on a UFB "High-Rate" Savings account was 3.91% APY. When UFB began offering its "Best" Savings Account just a few weeks later, UFB capped the interest rate on the "High-Rate" savings accounts without providing any notice to its "High-Rate" accountholders that their accounts were no longer best available. Accordingly, a consumer who opened a High-Rate Savings account currently receives 3.91% interest rate, which is far lower than the Federal Reserve rate and the interest rates offered on the more recent Legacy Accounts (i.e., the UFB "Best" Savings, UFB "Preferred" Savings, UFB "Premier" Savings, UFB "Priority" Savings, and UFB "High-Yield" Savings).

8.      If a consumer believed they were investing in UFB's "highest-yielding" savings account, it would only be for a short and undisclosed period of time until UFB announced its next purportedly high interest account, which could have been mere weeks later.

9.      UFB's failure to notify Legacy Account accountholders of the higher interest rate that was (and is) available to them through the new account was deliberate. UFB strategically and deliberately attempted to conceal its new, higher-interest accounts from the accountholders for its own financial gain, beginning with the highly similar name for each new account, which was designed to confuse accountholders as to the existence of the new, "high-yielding" account. As long as the Legacy Account accountholders maintained their deposits in an account with the lower interest rate, UFB paid less in interest than if those Legacy Account accountholders simply transferred their funds into the newer accounts.

10.     UFB's scheme turned out to be incredibly profitable. In 2023, Axos reported that there was an increase in interest-bearing checking and savings accounts due to the "increased consumer deposit accounts from increased marketing efforts."[4]

11.     No rational UFB consumer would voluntarily elect to receive less interest in their Legacy Account when they could have simply transferred their deposits to a nearly identical account offering more interest. Plaintiffs and the Class were significantly harmed by UFB's conduct, including through lost interest payments that should have been paid on their deposits when UFB was ready, willing, and able to pay those higher rates on the virtually identical "higher yielding" interest rate savings accounts.

12.     Plaintiffs, individually and on behalf of all other similarly situated, seek to end UFB's deceptive practices and obtain damages, restitution, and equitable relief, as set forth below.

## PARTIES

13.     Plaintiff Kyle Ash is and was, at all relevant times, a citizen of the State of California, currently residing in Orange County, California. Ash has been an UFB accountholder since early 2023. Ash still holds a savings account as of the filing of this Complaint.

14.     Plaintiff Moshe Stempel is and was, at all relevant times, a citizen of the State of New York,

[4] See Axos Financial, Inc. Annual Report (Aug. 9, 2023)
https://www.sec.gov/ixviewer/ix.html?doc=/Archives/edgar/data/0001299709/000129970923000198/ax-20230630.htm

residing in Queens, New York. Stempel has been an UFB accountholder since January 2023. Stempel still holds a savings account as of the filing of this Complaint.

15.    Defendant UFB is headquartered in San Diego, California. It is the online-only banking brand of Axos, which is a wholly-owned subsidiary of Axos Financial, Inc. Axos markets its UFB online banking products to consumers nationwide.

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the amount in controversy, exclusive of costs and interest, exceeds the sum of $5,000,000.00, (2) the proposed Class is comprised of at least 100 members, and (3) complete diversity exists between at least one plaintiff and one defendant.

17.    This Court has personal jurisdiction over UFB because its principal place of business is in California, and it is headquartered in San Diego, California. UFB also conducts substantial business in this district and in the State of California through its offering and servicing of banking and credit products and services to consumers in California through the internet, phone, and by mail. UFB maintains minimum contacts with California such that an exercise of personal jurisdiction by this Court does not offend traditional notions of fair play and substantial justice. Moreover, Stempel and members of the proposed Class have suffered injury as a result of UFB's acts in this district.

18.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because UFB is subject to personal jurisdiction here and a substantial portion of the events and/or omissions giving rise to this action occurred in this district.

## COMMON FACTUAL ALLEGATIONS

**A.  UFB's High-Yield Savings Accounts.**

19.    A savings account is a deposit account designed to hold money for an extended period of time. A bank typically pays interest on monies that an accountholder deposits in a savings account. The APY is a metric showing the total amount of interest paid on an account in one year, which is expressed as a percentage.

20.     In early 2022, UFB offered and advertised a savings account that it called "High Yield Savings."[5] By March 2022, UFB advertised that its High Yield Savings account returned an APY of up to .20%. *See id*. UFB further represented that this was its "highest-yielding" savings account.

21.     Around April 2022, without any notice to accountholders, UFB decided to cap the APY on its High Yield Savings account as it was set to introduce a new savings account with a higher interest rate. As further alleged below, this practice was the start of a pattern where UFB would cap the interest rate on one "high-yielding" savings account, and then introduce another savings account with a higher interest rate to attract new consumers.

22.     From April 2022 until around August 2022, UFB introduced and advertised a new high-yield savings account called the "Savings" account ("Savings Account").[6] Initially, the Savings Account offered an interest rate of up to .81%. *See id*. Over the next few months, the interest rate on the Savings Account increased to 1.81%.[7] During this time, UFB advertised the Savings Account as its "highest-yielding" account.[8]

23.     Then, around August 2022, UFB decided to cap the interest rate on its Savings Accounts as well, as it introduced a new savings account with a higher interest rate. The interest rate on the Savings Account is currently .81%.

24.     From August 2022 to September 2022, UFB introduced and advertised its new high-yield savings account called the "Rewards Savings" account.[9] Initially, UFB advertised the Rewards Savings

---

[5] *See* http://ufbdirect.com (accessed on March 11, 2024, via Wayback Machine at URL https://web.archive.org/web/20220209074149/https://www.ufbdirect.com/).

[6] *See* http://ufbdirect.com (accessed March 11, 2024, via Wayback Machine at URL https://web.archive.org/web/20220427195221/https://www.ufbdirect.com/).

[7] *See* http://ufbdirect.com (accessed March 11, 2024, via Wayback Machine at URL https://web.archive.org/web/20220812201352/https://www.ufbdirect.com/).

[8] *See* http://ufbdirect.com (accessed March 11, 2024, via Wayback Machine at URL https://web.archive.org/web/20220727234500/https://www.ufbdirect.com/Savings/UFB-Savings).

[9] *See* http://ufbdirect.com (accessed March 11, 2024 via Wayback Machine at URL https://web.archive.org/web/20220901124726/https://www.ufbdirect.com/).

account advertised an interest rate up to 2.21%. *Id.* Over the month, UFB increased the advertised APY on the Rewards Savings account up to 2.61%.[10] During this time, UFB advertised the Rewards Savings account as UFB's "highest-yielding" savings account.[11]

25.    Then again, in September 2022, UFB decided to cap the interest rate on its Rewards Savings account as it introduced a new savings account with a highest interest rate.

26.    From September 2022 until around October 2022, UFB introduced and advertised its new high-yield savings account called the "Elite Savings" account.[12] Initially, UFB advertised the Elite Savings account with an interest rate of up to 2.85%. *See id*. Over the next month, UFB increased the advertised APY up to 3.16%.[13]  During this time, UFB advertised the Elite Savings account as its "highest-yielding" savings account.[14]

27.    Once again, around October 2022, UFB decided to cap the APY on its Elite Savings account as it introduced its next savings account with a higher interest rate. The APY on the Elite Savings account is still no more than 3.16%.

28.    From November 2022 until around December 2022, UFB introduced and advertised its new high yield savings account called the "High Rate Savings" account.[15] Initially, UFB advertised the High

---

[10] *See* http://ufbdirect.com (accessed on March 11, 2024 via Wayback Machine at URL https://web.archive.org/web/20220925231444/https://www.ufbdirect.com/).

[11] *See* https://www.ufbdirect.com/Savings/UFB-Rewards-Savings accessed on March 11, 2024 via Wayback Machine at URL https://web.archive.org/web/20220916014705/https://www.ufbdirect.com/Savings/UFB-Rewards-Savings).

[12] *See* http://ufbdirect.com (accessed on March 11, 2024, via Wayback Machine at URL https://web.archive.org/web/20220928091242/https://www.ufbdirect.com/).

[13] *See* http://ufbdirect.com (accessed on March 11, 2024, via Wayback Machine at URL https://web.archive.org/web/20221031200826/https://www.ufbdirect.com/).

[14] See https://www.ufbdirect.com/Savings/UFB-Elite-Savings (accessed on March 11, 2024, via Wayback Machine at URL https://web.archive.org/web/20220927201028/https://www.ufbdirect.com/Savings/UFB-Elite-Savings).

[15] *See* http://ufbdirect.com (accessed on March 11, 2024, via Wayback Machine at URL https://web.archive.org/web/20221116175211/https://www.ufbdirect.com/).

Rate Savings account with an APY of 3.83%. *See id*. Over the next month, UFB increased the APY on the High Rate Savings account to 3.91%.[16]  During this time, UFB advertised the High Rate Savings account as its "highest-yielding" savings account.[17]

29.     In December 2022, UFB decided to cap the APY on its High Rate Savings account as it introduced the next savings account with a higher interest rate. The APY on the High Rate Savings account is still no more than 3.91%.

30.     From December 2022 until around February 2023, UFB introduced and advertised its new high-yield savings account called the "Best Savings" account.[18] Initially, UFB advertised the Best Savings account an interest rate of up to 4.11%. *See id*. Over the next month or so, UFB increased the APY on the Best Savings account to 4.21%.[19]  During this time, UFB advertised the Best Savings account as its "highest-yielding" savings account.[20]

31.     Around February 2023, UFB decided to cap the APY on its Best Savings account as it introduced its next savings account. The APY on the Best Savings account is still no more than 4.21%.

32.     From March 2023 until around April 2023, UFB introduced and advertised its new high-yield savings account called the "Preferred Savings" account.[21] Initially, UFB advertised the Preferred

---

[16] *See* http://ufbdirect.com (accessed on March 11, 2024, via Wayback Machine at URL https://web.archive.org/web/20221202155606/https://www.ufbdirect.com/).

[17] *See* https://www.ufbdirect.com/Savings/UFB-high-rate-savings (accessed on March 11, 2024, via Wayback Machine at URL https://web.archive.org/web/20221210001047/https://www.ufbdirect.com/Savings/ufb-high-rate-savings).

[18] *See* http://ufbdirect.com (accessed on March 11, 2024, via Wayback Machine at URL https://web.archive.org/web/20221216183806/https://www.ufbdirect.com/).

[19] *See* http://ufbdirect.com (accessed on March 11, 2024, via Wayback Machine at URL https://web.archive.org/web/20230120204348/http://www.ufbdirect.com/).

[20] *See* https://www.ufbdirect.com/Savings/UFB-Best-Savings (accessed on March 11, 2024, via Wayback Machine at URL https://web.archive.org/web/20230203105042/https://www.ufbdirect.com/Savings/ufb-best-savings).

[21] *See* http://ufbdirect.com (accessed on March 11, 2024, via Wayback Machine at URL https://web.archive.org/web/20230307120024/https://www.ufbdirect.com/).

Savings account with an interest rate of up to 4.55%. *See id*. Over the next month or so, UFB increased the APY to 5.02%.[22] During this time, UFB advertised the Preferred Savings account as its "highest-yielding" savings account.[23]

33.   Around April 2023, UFB decided to cap the APY on its Preferred Savings Account as it introduced the next savings account with a higher interest rate. The APY on the Preferred Savings Account is still at 5.02%.

34.   From April 2023 until around July 2023, UFB introduced and advertised its new high-yield savings account called the "Premier Savings" account.[24] Initially, UFB advertised the Premier Savings account with an interest rate of up to 4.81%. *See id*. During this time, UFB advertised the Premier Savings account as its "highest-yielding" savings account.[25]

35.   Around July 2023, UFB decided to cap the APY on its Premier Savings account as it introduced its next savings account with a higher interest rate. The APY on the Premier Savings Account is still no more than 4.81%.

36.   From early August 2023 until the middle August 2023, UFB introduced and advertised its new high-yield savings account called the "Priority Savings" account.[26] Initially, UFB advertised the

---

[22] *See* http://ufbdirect.com (accessed on March 11, 2024, via Wayback Machine at URL https://web.archive.org/web/20230413053726/https://www.ufbdirect.com/).

[23] *See* https://www.ufbdirect.com/Savings/ufb-preferred-savings (accessed on March 11, 2024 via Wayback Machine at URL https://web.archive.org/web/20230413014727/https://www.ufbdirect.com/Savings/ufb-preferred-savings).

[24] *See* http://ufbdi- rect.com (accessed on March 11, 2024, via Wayback Machine at URL https://web.archive.org/web/20230428044800/https://www.ufbdirect.com/).

[25] *See* https://www.ufbdirect.com/Savings/UFB-Premier-Savings (accessed on March 11, 2024 via Wayback Machine at URL https://web.archive.org/web/20230622113757/https://www.ufbdirect.com/Savings/ufb-premier-savings).

[26] *See* http://ufbdirect.com (accessed on March 11, 2024, via Wayback Machine at URL https://web.archive.org/web/20230809082844/https://www.ufbdirect.com/).

Priority Savings account with an interest rate of up to 5.06%. *See id*. During this time, UFB advertised the Priority Savings account as its "highest-yielding" savings account.[27]

37.    Around middle of August 2023, UFB decided to cap the APY on its Priority Savings account as it introduced its next savings account with higher interest rates. The APY on the Premier Savings Account is still no more than 5.06%.

38.    From middle of August 2023 until November 2023, UFB introduced and advertised its new high-yield savings account called "High Yield Savings" account.[28] Initially, UFB advertised the High Yield Savings account with an APY of up to 5.25%. *See id*. During this time, UFB advertised the High Yield Savings account as its "highest-yielding" savings account.[29]

39.    From November 2023 to present, UFB introduced and advertised its new high-yield savings account called the "Secure Savings" account.[30] Initially, UFB advertised the Secure Savings account with an APY of up to 5.25%. *See id*. Notably, UFB did not advertise the new Secure Savings account as its "highest-yielding." This "omission" was intentional as UFB looked to distance this account from its Legacy Accounts and its prior deceptive advertising.

40.    As demonstrated above, UFB's rollout of each new account was accompanied by the promise that each account was (and would be) the "highest yielding" account. In reality, UFB simply froze or lowered what was promised to be the "highest yielding" and "variable" interest rate on each account despite material increases in the Federal Reserve market rates and increases in the interest rate offered on

---

[27] *See* https://www.ufbdirect.com/Savings/ufb-priority-savings (accessed on March 11, 2024, via Wayback Machine at URL https://web.archive.org/web/20230804043854/https://www.ufbdirect.com/Savings/ufb-priority-savings).

[28] *See* http://ufbdirect.com (accessed on March 11, 2024, via Wayback Machine at URL https://web.archive.org/web/20230828022246/https://www.ufbdirect.com/).

[29] *See* https://www.ufbdirect.com/Savings/ufb-high-yield-savings (accessed on March 11, 2024, via Wayback Machine at URL https://web.archive.org/web/20230822125513/https://www.ufbdirect.com/Savings/ufb-high-yield-savings).

[30] *See* http://ufbdi- rect.com (accessed on March 11, 2024, via Wayback Machine at URL https://web.archive.org/web/20231121133711/https://www.ufbdirect.com/).

each new subsequent account. By doing so, UFB disregarded and abandoned its longtime and existing accountholders and its prior promises and representations of "high-yielding" savings account.

41.    Worse yet, UFB failed to notify its longtime and/or existing Legacy accountholders that (1) UFB launched a new savings account with higher interest rates; (2) each new savings account was a different product; or (3) each new savings account offered a higher interest rate than the previous "highest yielding" savings account.

42.    UFB's failure to provide any notice that it would stop offering the "highest yielding" interest rate on its existing "highest yielding" accounts was intentional—UFB was financially motivated to keep each account holder in the dark about the newer account because it knew it would profit from paying less interest on each prior account.

43.    Between January 2022 and November 2023, consumers reasonably believed they were receiving, and would continue to receive, the highest interest rate and APY offered by UFB.

**B.  Plaintiff Kyle Ash's experience.**

44.    In or around early 2023, Ash opened a Premier Savings account with USB.

45.    Ash relied on UFB's representations and promises that the account was the "highest yielding" savings account and that UFB was "reputable" and offered interest rates that were "consistently higher than the national average." As such, at all relevant times, Ash always kept a balance in his account in order to earn the "high interest" that UFB promised.

46.    Ash's account remains open as of the filing of this Complaint.

47.    Ash was significantly damaged by UFB's conduct. Between early 2023 and March 2024, Ash received significantly less interest payments on the monies deposited in his account than he would have received had he simply transferred those monies into any of the newer savings accounts. But for UFB's deceptive misrepresentations and omissions and failure to exercise its contractual discretion in good faith, Ash would have received substantially higher amounts in interest payments.

48.    Ash would not have opened a savings account with UFB, or he would have deposited his savings into a different high-interest account (potentially into one of UFB's newer savings accounts) if he knew that (1) the account was not, in fact, "high yield," or "highest-yielding" and/or (2) that UFB would not act in good faith when setting the purportedly "variable" interest rate on the Premier Savings account.

**C. Plaintiff Moshe Stempel's experience.**

49.     In or around January 2023, Stempel opened a Best Savings account with UFB.

50.     Stempel relied on UFB's representations and promises that the account was the "highest yielding" savings account and that UFB was "reputable" and offered interest rates that were "consistently higher than the national average." Stempel kept a balance in his account through October 2023 in order to earn the "high interest" that was promised.

51.     Stempel's account remains open as of the filing of this Complaint.

52.     Until November 2023, Stempel was not aware that UFB introduced and offered other savings accounts with higher interest rates. Stempel never received notice from UFB that it was no longer enrolled in UFB's highest-yielding savings account or that his interest rates had been capped.

53.     Stempel was significantly damaged by UFB's conduct. Between March 2023 and October 2023, Stempel received significantly less interest payments on the monies deposited in his account than he would have received had he simply transferred those monies into any of the newer savings accounts. But for UFB's deceptive misrepresentations and omissions and failure to exercise its contractual discretion in good faith, Stempel would have received substantially higher amounts in interest payments.

54.     Stempel would not have opened a savings account with UFB, or he would have deposited his savings into a different high-interest account (potentially into one of UFB's newer savings accounts) if he knew that (1) the account was not, in fact, "high yield," or "highest-yielding" and/or (2) that UFB would not act in good faith when setting the purportedly "variable" interest rate on the Best Savings account.

**CLASS ALLEGATIONS**

55.     Pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), Plaintiffs bring this action individually and on behalf of a proposed Nationwide Class of similarly situated persons defined as follows:

*All persons who have ever maintained a UFB high-yield savings account.*

In the alternative, Plaintiffs bring this action individually and on behalf of the following proposed State Classes of similarly situated persons defined as follows:

*California Class: All persons in California who have ever maintained a UFB high-yield savings account.*

*New York Class: All persons in New York who have ever maintained a UFB high-yield savings account.*

56.    The Nationwide Class, the California Class and the New York Class are collectively referred to as the "Class."

57.    Excluded from the Class are UFB, any entities in which it has a controlling interest, and any legal representative, heir or assign of UFB. Also excluded from the Class are the presiding judge(s) in this case, their staff, and any members of their immediate family.

58.    Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new information obtained during discovery.

59.    **Numerosity**:  At this time, Plaintiffs do not know the exact size of the Class; however, due to the nature of the trade and commerce involved, Plaintiffs believe and allege that the Class members number well into the thousands, and thus are so numerous that joinder of all members is impractical.  The number and identities of Class members are administratively feasible and can be determined through appropriate discovery in the possession of UFB.

60.    **Commonality and Predominance**:  There are questions of law and/or fact common to the Class, such that there is a well-defined community of interest among the Class members. These questions predominate over questions that may affect only individual members as UFB has acted on grounds generally applicable to the Class. Moreover, adjudication of these common issues in a single action has important and desirable advantages of judicial economy. Such common legal or factual questions include, but are not limited to, the following:

    a.    Whether UFB unfairly, unethically, and/or deceptively represented that the Legacy Accounts were the "highest yielding" accounts;

    b.    Whether UFB unfairly, unethically, and/or deceptively failed to disclose facts regarding its representation that the Legacy Accounts were the "highest yielding" accounts;

    c.    Whether UFB's misrepresentations and omissions regarding the Legacy Accounts were material;

    d.    Whether UFB's alleged misconduct misled or had the tendency to mislead consumers;

e.      Whether UFB engaged in unfair and/or fraudulent business practices under the laws asserted;

f.      Whether UFB's conduct violated California's Unfair Competition Law;

g.      Whether UFB's conduct violated California's False Advertising Law;

h.      Whether UFB's conduct violated New York General Business Law § 349;

i.      Whether UFB's conduct violated New York General Business Law § 350;

j.      Whether UFB acted in bad faith when it adjusted (or failed to adjust) the interest rate on the Legacy Accounts;

k.      Whether UFB's conduct breached the covenant of good faith and fair dealing;

l.      Whether UFB was unjustly enrichment through its conduct;

m.      Whether Plaintiffs and the Class were harmed by UFB's practices, omissions and/or misrepresentations;

n.      Whether Plaintiffs and the Class are entitled to actual, compensatory, and/or nominal damages, and the proper measure thereof; and

o.      Whether UFB should be enjoined from continuing its unfair practices described herein.

61.      **Typicality**: Plaintiffs, just like many other consumers, opened and maintained Legacy Accounts based on the same misrepresentations and omissions regarding them being, *inter alia*, a "high yield" or the "highest yielding" savings account. Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and the Class have suffered the same or similar injury as a result of UFB's false, deceptive, misleading, and bad faith conduct, and their claims assert the same legal theory. Moreover, Plaintiffs are not subject to any unique defenses. As such, Plaintiffs' claims are typical of the claims of the Class.

62.      **Adequacy of Representation**: Plaintiffs are adequate representative of the Class. They are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated, and they have retained competent counsel experienced in the prosecution of consumer class actions such as this, and who have the financial and legal resources necessary to litigate this case through resolution, including through trial and appeal, if necessary. Plaintiffs do not have any interests adverse to those of the Class.

63.    **Superiority**: A class action is the superior method for fair and efficient adjudication of the controversy.  The likelihood that individual Class members will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the comparatively modest amount of monetary relief available for each individual Class member. Moreover, prosecution of separate actions by individual Class members would create a risk inconsistent or contradictory judgments, lead to the duplication of evidence, effort, and expense, and unnecessarily overwhelm the court system. The benefits of class treatment, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. Plaintiffs do not anticipate any difficulty in the management of this litigation as a class action.

64.    UFB has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Plaintiffs remain interested in maintaining a savings account at UFB.

65.    UFB's ongoing and systematic practices make declaratory relief with respect to the Class appropriate.

## FIRST CAUSE OF ACTION

### Violation of California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code § 17200, *et seq.*

66.    Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs as though fully set forth herein.

67.    The UCL defines "unfair competition" to include any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

68.    A business practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practices against the gravity of the harm to the alleged victims.

69.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

70.     The UCL imposes strict liability. Plaintiffs need not prove that UFB intentionally or negligently engaged in unfair business practices—but only that such practices occurred.

71.     UFB's conduct described herein is "unfair" because it violates public policy and is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, and any utility of such practices is outweighed by the harm caused to consumers, including to Plaintiffs, the Class, and the public. More specifically, UFB, *inter alia*:

     a.    Deceptively rolled out new savings accounts with deliberately similar (and confusing) names to its predecessor accounts, which offered higher interest rates than rates paid on existing high-interest accounts;

     b.    Failed to inform Plaintiffs and the Class members that (1) it had created a superior savings account with a similar name, (2) it was providing a superior product to new accountholders, or that (3) they could easily take advantage of the near-identical savings account and immediately receive significantly higher interest rates;

     c.    Misrepresented that the Legacy Accounts it marketed to Plaintiffs and the Class members were UFB's "highest-yielding" savings account;

     d.    Represented to Plaintiffs and the Class members that they were opening UFB's "highest yielding" savings accounts, but failed to disclose that they would only be the "highest yielding" accounts for a short, arbitrary period of time until UFB introduced a new, similarly named account with higher interest rates; and

     e.    Misrepresented to Plaintiffs and the Class members that the interest rates on the Legacy Accounts would vary in a non-arbitrary manner, and in accordance with relevant benchmarks like the Federal Reserve rate.

72.     There were reasonably available alternatives to further UFB's legitimate business interests, other than engaging in the misleading and deceptive conduct described herein.

73.     UFB's conduct is "fraudulent" because it affirmatively and knowingly misrepresented to its consumers that each Legacy Account was its "highest yielding" savings account and that it would use its discretion fairly to set interest rates paid, when UFB knew that it would introduce new accounts that paid

higher interest rates. This conduct was likely to, and did, deceive reasonable consumers, including Plaintiffs.

74.     UFB's conduct and actions are deceptive, untrue, and misleading to reasonable consumers, and will continue to mislead consumers in the future.

75.     Plaintiffs relied on UFB's misrepresentations and omissions to open their respective savings account and to deposit their savings into those accounts.

76.     As a direct and proximate result of UFB's misconduct, Plaintiffs and Class members have suffered and will continue to suffer actual damages.

77.     UFB's wrongful conduct is ongoing and presents a continuing threat to Class members.

78.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs seek restitution, disgorgement, and an injunction enjoining UFB from continuing to engage in the unfair business practices described above.

**SECOND CAUSE OF ACTION**

**Violation of Cal. Bus. & Prof. Code § 17500, *et seq.***

79.     Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs as though fully set forth herein, except those made under preceding cause of action.

80.     California's False Advertising Law ("FAL") provides, in pertinent part, that

> It is unlawful for any person, firm, corporation or association, or any employee thereof . . . to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning . . . those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell . . . those services, professional or otherwise, so advertised at the price stated therein, or as so advertised.

Cal. Bus. & Prof. Code § 17500.

81.     UFB engaged in false and/or misleading advertising practices in violation of California's FAL by, *inter alia*: (1) representing to Plaintiffs and the Class members that they were opening UFB's

17

CLASS ACTION COMPLAINT

"highest-yielding" savings account, but failed to disclose that this would only be for a short, arbitrary period of time until UFB introduced a new account with higher interest rates; (2) representing to Plaintiffs and the Class members that they held their deposits in UFB's "highest-yielding" savings account, but failed to disclose they were not; and (3) representing that the interest rates on the Legacy Accounts would vary in a non-arbitrary manner and in accordance with relevant benchmarks, like the Federal Reserve rate, which was not true.

82.     There were reasonably available alternatives to further UFB's legitimate business interests, other than engaging in the misleading and deceptive conduct described herein.

83.     UFB's conduct and actions are deceptive, untrue, and misleading to reasonable consumers, and will continue to mislead consumers in the future.

84.     Plaintiffs relied on UFB's representations to open their respective savings account and to deposit their savings into those accounts.

85.     As a direct and proximate result of UFB's misconduct, Plaintiffs and Class members have suffered and will continue to suffer actual damages.

86.     UFB's wrongful conduct is ongoing and presents a continuing threat to Class members.

**THIRD CAUSE OF ACTION**

**Violation of New York General Business Law § 349**

87.     Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs as though fully set forth herein, except those made under preceding cause of action.

88.     New York General Business Law ("GBL") § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. GBL § 349.

89.     UFB engaged in deceptive acts or practices in the conduct of its business, trade or commerce, or in the furnishing of its services in New York by, *inter alia*:

> a.     Deceptively rolling out new savings accounts with similar (and confusing) names to its predecessor accounts, which offered higher interest rates than those offered on the predecessor "high interest" accounts;

b.   Failed to inform Plaintiffs and the Class members that (1) it had created a superior savings account with a similar name, (2) it was providing a superior product to new accountholders, or (3) they could easily take advantage of the near-identical savings account and immediately receive significantly higher interest;

c.   Misrepresented that the Legacy Accounts marketed to Plaintiffs and the Class members were UFB's "highest-yielding" savings account;

d.   Represented to Plaintiffs and the Class members that they were opening UFB's "highest yielding" savings accounts but failed to disclose that this would only be for a short, arbitrary period of time until UFB introduced a new account with higher interest rates; and

e.   Misrepresented to Plaintiffs and the Class members that the interest rates on the Legacy Accounts would vary in a non-arbitrary manner and in accordance with relevant benchmarks, like the Federal Reserve rate.

90.   The aforementioned acts and practices are consumer-oriented, unlawful and prohibited by New York's GBL § 349.

91.   There were reasonably available alternatives to further UFB's legitimate business interests, other than engaging in the misleading and deceptive conduct described herein.

92.   UFB's conduct and actions are deceptive, untrue, and misleading to reasonable consumers, and will continue to mislead consumers in the future.

93.   Plaintiffs relied on UFB's representations to maintain their respective savings account and to deposit their savings into those accounts.

94.   As a direct and proximate result of UFB's misconduct, Plaintiffs and Class members have suffered and will continue to suffer actual damages.

95.   UFB's wrongful conduct is ongoing and presents a continuing threat to Class members.

96.   Pursuant to New York GLB § 349, Plaintiffs seek damages, attorneys' fees and an injunction enjoining UFB from continuing to engage in the unfair business practices described above.

# FOURTH CAUSE OF ACTION

## Violation of New York General Business Law § 350

97.     Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs as though fully set forth herein, except those made under preceding cause of action.

98.     New York GBL § 350 declares unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. GBL § 350.

99.     UFB engaged in false advertising in the conduct of its business, trade or commerce or in the furnishing of its services by, *inter alia*:

    a.    Deceptively rolling out new savings accounts with similar (and confusing) names to its predecessor accounts, which offered higher interest rates than those offered to predecessor "high interest" accounts;

    b.    Failing to inform Plaintiffs and the Class members that (1) it had created a superior savings account with a similar name, (2) it was providing a superior product to new accountholders, or (3) they could easily take advantage of the near-identical savings account and immediately receive significantly higher interest;

    c.    Misrepresenting that the Legacy Accounts marketed to Plaintiffs and the Class members were UFB's "highest-yielding" savings account;

    d.    Representing to Plaintiffs and the Class members that they were opening UFB's "highest yielding" savings accounts but failed to disclose that this would only be for a short, arbitrary period of time until UFB introduced a new account with higher interest rates; and

    e.    Misrepresenting to Plaintiffs and the Class members that the interest rates on the Legacy Accounts would vary in a non-arbitrary manner and in accordance with relevant benchmarks, like the Federal Reserve rates.

100.     The aforementioned acts and practices are consumer-oriented, unlawful, and prohibited by New York's GBL § 350.

101.    There were reasonably available alternatives to further UFB's legitimate business interests, other than engaging in the misleading and deceptive conduct described herein.

102.    UFB's conduct and actions are deceptive, untrue, and misleading to reasonable consumers, and will continue to mislead consumers in the future.

103.    Plaintiffs relied on UFB's representations to keep open her their respective savings account and to deposit their savings into those accounts.

104.    As a direct and proximate result of UFB's misconduct, Plaintiffs and Class members have suffered and will continue to suffer actual damages.

105.    UFB's wrongful conduct is ongoing and presents a continuing threat to Class members.

106.    Pursuant to New York GLB § 349, Plaintiffs seek damages, attorneys' fees and an injunction enjoining UFB from continuing to engage in the unfair business practices described above.

### FIFTH CAUSE OF ACTION

#### Breach of Contract Including Breach
#### of the Covenant of Good Faith and Fair Dealing

107.    Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs, except those made under preceding causes of action, as though fully set forth herein.

108.    Plaintiffs and the Class members entered into a contract with UFB related to the opening and maintenance of their accounts.

109.    The Account Agreement provides, "the interest rate and corresponding APY for savings and money market accounts are variable and are set at our discretion."

110.    UFB breached the Account Agreement by, *inter alia*, failing to vary the interest rates on the Legacy Accounts each time the bank offered a newly-named savings account product to new customers.

111.    In addition, a covenant of good faith and fair dealing is implied by law in all contracts and required that UFB exercise contractual discretion honestly and in good faith. The covenant of good faith and fair dealing requires that neither party shall do anything which will have the effect of destroying or

injuring the right of the other party to receive the fruits of the contract. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.

112.    UFB breached the covenant of good faith and fair dealing by exercising its discretion in bad faith to the detriment of Plaintiffs and the Class members when it decided to, *inter alia*: (1) freeze and/or decrease the interest rate on its purportedly "highest-yielding" savings accounts while relevant benchmarks such as the Federal Reserve rate increased; (2) continually and deceptively launching virtually identical savings accounts that immediately offered a higher interest rate than the predecessor "high interest" savings accounts; (3) maintaining lower interest rates at all relevant times on the predecessor savings accounts while increasing the interest rates on the subsequent savings accounts; and (4) not give any notice to existing Legacy Account accountholders of the launch of virtually identical savings accounts that would always offer a higher interest rate than their existing accounts.

113.    Plaintiffs and Class members have performed or substantially performed all obligations imposed on them under the Account Agreement.

114.    Plaintiffs and Class members have sustained damages as a result of UFB's breach of the contract and breach of the implied covenant of good faith and fair dealing.

## SIXTH CAUSE OF ACTION

### Unjust Enrichment

115.    Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs, except those made under preceding causes of action, as though fully set forth herein.

116.    This claim is pled in the alternative.

117.    Plaintiffs and the Class members conferred a monetary benefit on UFB by depositing and maintaining monies in the savings accounts.

118.    UFB knowingly and voluntarily accepted and retained these benefits.

119.    The circumstances are such that it would be unequitable for UFB to retain the benefits it received from Plaintiffs and the Class because, as fully described herein, UFB paid less interest on those monies than it promised and that it was otherwise ready, willing, and able to pay, as demonstrated by the

fact that it paid a significantly higher interest rate on the virtually identical savings accounts that were introduced thereafter.

120.    Through its conduct alleged herein, UFB was unjustly enriched to the detriment of Plaintiffs and the Class.

121.    As a result of UFB's wrongful conduct, Plaintiffs and Class members are entitled to restitution and disgorgement of all profits, benefits and other compensation obtained by UFB.

**JURY DEMAND**

Plaintiffs and the Class members hereby demand a jury trial on all claims so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for the following relief:

(a)    An order certifying the Class as requested herein, appointing Plaintiffs as Class Representative and Plaintiffs' counsel as Class Counsel;

(b)    An order declaring UFB's conduct unfair and/or fraudulent;

(c)    An order enjoining UFB from the unlawful conduct alleged herein, including by ordering Defendants to convert all Legacy Accounts into Secure Savings accounts, and/or ordering Defendants to immediately provide variable, high-yield interest rates to Legacy Accountholders commensurate with the rates offered on the Secure Savings account;

(d)    An order awarding Plaintiffs and the Class restitution and/or disgorgement;

(e)    An order awarding Plaintiffs and the Class all damages available under the law, including compensatory, statutory, and punitive, as well as pre- and post-judgment interest;

(f)    An order awarding Plaintiffs and the Class their reasonable attorneys' fees and costs of suit, along with pre- and post-judgment interest; and

(g)    An order awarding any other and further relief as this Court deems just, proper and equitable.

Dated: March 13, 2024                    Respectfully submitted,

                                         By: _/s/ Scott Edelsberg_

                                         **EDELSBERG LAW, P.A.**
                                         Scott Edelsberg (SBN 330090)
                                         scott@edelsberglaw.com
                                         Chris Gold (*pro hac vice* forthcoming)
                                         chris@edelsberglaw.com
                                         Gabriel Mandler (*pro hac vice* forthcoming)
                                         gabriel@edelsberglaw.com
                                         1925 Century Park East, Suite 1700
                                         Los Angeles, California 90067
                                         Tel: (305) 975-3320

                                         **KALIEL GOLD PLLC**
                                         Jeffrey D. Kaliel (SBN 238293)
                                         *jkaliel@kalielgold.com*
                                         1100 15th Street NW, 4th Floor
                                         Washington, D.C.  20005
                                         Tel: (202) 350-4783

                                         **KALIEL GOLD PLLC**
                                         Sophia Goren Gold (SBN 307971)
                                         *sgold@kalielgold.com*
                                         950 Gilman Street, Suite 200
                                         Berkeley, California 94710
                                         Tel: (202) 350-4783


                                         *Attorneys for Plaintiffs and the Proposed Class*

CLASS ACTION COMPLAINT